IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 15-00154-KD |
| ) | USAO No: 11R00511 |
| GULF COAST ASPHALT COMPANY, L.L.C. ) | |

## PLEA AGREEMENT

The defendant, **GULF COAST ASPHALT COMPANY, L.L.C. (GCAC)**, represented by its counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1. The defendant understands his rights as follows:

    a. To be represented by an attorney;

    b. To plead not guilty;

    c. To have a trial by an impartial jury;

    d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in its defense; and

    e. To not be compelled to incriminate itself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Counts One and Two of the information, charging violations of Title 33, United States Code, Section 1321(b)(3), Oil Pollution Act and 16 U.S.C. Section 703(a), Migratory Bird Treaty Act.

Rev. 8/14

3. The defendant understands that the statements made under oath in the plea of guilty must be completely truthful and that it can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements it makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon statements made in the factual resume and response to any questions that the company may be asked during the guilty plea hearing.

5. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and its counsel have discussed possible defenses to the charge. The defendant believes that its attorney has represented it faithfully, skillfully, and diligently, and is completely satisfied with the legal advice of its attorney.

6. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and it's counsel are not part of this agreement and are not agreed to by the United States.

7. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the

particular sentence that the Court will impose. The defendant is pleading guilty because it is guilty.

8. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

9. The maximum penalty the Court could impose as to Count One of the Information is:

   a. A fine of either Two Hundred Thousand ($200,000) dollars, or twice the gross gain or loss resulting from the unlawful conduct, pursuant to 18 U.S.C § 3571 (c) and (d);

   b. A term of probation up to 5 years, pursuant to 18 U.S.C § 3561 (c)(2);

   c. A mandatory special assessment of $125.00, pursuant to 18 U.S.C § 3013 (a)(1)(B); and

   d. Such restitution as may be ordered by the Court.

10. The maximum penalty the Court could impose as to Count Two of the Information is:

    a.    A fine of either Fifteen Thousand ($15,000) dollars, or twice the gross gain or loss resulting from the unlawful conduct, pursuant to 18 U.S.C § 3571(d);

    b.    A term of probation up to five years, pursuant to 18 U.S.C § 3561 (c)(2);

    c.    A mandatory special assessment of $125.00, pursuant to 18 U.S.C § 3013 (a)(1)(B)(iii); and

    d.    Such restitution as may be ordered by the Court.

## SENTENCING AND APPLICATION OF FED. R. CRIM. P. 11(c)(1)(C)

11.    The defendant acknowledges the Court will impose the sentence in this case, and that the parties have reached a binding agreement as to the appropriate sentence in this case. Specifically, the defendant acknowledges that Federal Rules of Criminal Procedure 11(c)(1)(C) provides in relevant part:

> If the defendant pleads guilty… to … a charged offense…, the plea agreement may specify that an attorney for the government will: … (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case…(such a recommendation or request binds the court once the court accepts the plea agreement).

12.    The defendant has gone over Rule 11(c)(1)(C) with its attorney and understands that its provisions will govern the procedure for the sentence imposed by the Court in this case.

13.    The parties agree that the following sentence is an appropriate disposition in this case:

a. The defendant agrees to pay restitution to the United States Coast Guard in the amount of Two Hundred and Ninety-two Thousand ($292,000) dollars;

b. The defendant agrees to pay restitution to the Alabama Department of Conversation and Natural Resources, Wildlife and Freshwater Fisheries Division, in the amount of Seventy-Five Thousand ($75,000) dollars;

c. The defendant agrees to pay a total criminal penalty of One Million ($1,000,000) dollars of which the criminal fee will be Six Hundred and Sixty-seven Thousand ($667,000) dollars. The defendant agrees that this fine amount is appropriate pursuant to 18 U.S.C. § 3571(d). This amount will be paid at the time of guilty plea and sentencing.

d. The defendant agrees to pay a total of Three Hundred and Thirty Three Thousand ($333,000) dollars in the form of an organizational community service payment pursuant to §8B1.3 of the Federal Sentencing Guidelines and in furtherance of satisfying the sentencing principles provided for under 18 U.S.C. § 3553(a), as follows:

    1. The defendant shall pay Three Hundred and Thirty Three Thousand ($333,000) dollars to the National Fish and Wildlife Foundation ("NFWF"). The community service payment shall be applied by the NFWF to fund projects for the preservation and restoration of waterways and marine wildlife in and around the Southern District of Alabama.

    2. NFWF is a charitable and nonprofit organization established pursuant to 16 U.S.C. §§ 3701-3710. Its purposes include the acceptance

and administration of "property… to further the conservation and management of fish, wildlife, plants, and other natural resources," and the performance of "such other activities as will further the conservation and management of the fish, wildlife, and plant resources of the United States, and its territories and possessions of present and future generations of Americans." 16 U.S.C. § 3701(b)(1), (2). NFWF is empowered to "do any and all acts necessary and proper to carry out" these purposes, including, specifically, solicitation, acceptance, administration, and use of "any gift, devise or bequest… of real or personal property." 16 U.S.C. §3703(c)(1), (11). NFWF's Congressional charter mandates that it be governed by a Board of Directors that includes the Director of the United States Fish and Wildlife Service, the Under Secretary of Commerce for Oceans and Atmosphere, and various individuals educated or experienced in fish, wildlife, ocean, coastal, or other natural resources conservation. 16 U.S.C. §3702(b)(1),(2). NFWF is also required by its charter to submit to Congress annually a report of its proceedings and activities during such year, including a full and complete statement of its receipts, and expenditures.

e. The parties jointly recommend that the defendant be placed on organizational probation for a period of one year from the date of sentencing pursuant to 18 U.S.C. § 3561(c)(1) and USSG §§ 8D1.1 and 8D1.2. The parties recommend that the terms of probation be as follows:

The defendant agrees that it shall commit no further violation of the Clean Water Act, or any other federal, state, or local law, including those laws and regulations which primary enforcement has been delegated to the state authorities, and shall conduct all its operations in accordance with the environmental laws of the United States.

f. This agreement shall bind the defendant and its subsidiaries and agents, including all subsidiaries and agents that technically manage and/or operate its assets, property and assigns, including but not limited to all successors-in-interest, if applicable successors and assigns.  The defendant shall provide notice within 10 days to the U.S. Probation Office for the Southern District of Alabama, the Criminal Division of the EPA in Atlanta and the United States Attorney's Office for the Southern District of Alabama of any of the following:  any corporate name changes; any purchases or sale of assets, any purchases, sale or reorganization or divestiture; or any other change impacting upon or affecting this agreement;  No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change in legal status, sale or purchase of assets, or similar action shall alter the defendant's responsibilities under this agreement.  The defendant understands and agrees that it shall not engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

g.  The community service payment and restitution will be paid in its entirety six months from the date of this guilty plea and sentencing.

14. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

15. Both the defendant and the United States are free to allocute fully at the time of sentencing subject to the provisions of paragraph 13.

16. The defendant agrees to tender $250.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## UNITED STATES' OBLIGATIONS

17. The United States will not bring any additional charges against the defendant related to the facts underlying the Information. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

18. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

Rev. 8/14

Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

    a.    **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

        (1)    any sentence imposed in excess of the statutory maximum;

        (2)    any sentence which constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

19. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

20. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

21. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

22. The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this

agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

23. In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

24. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,
KENYEN R. BROWN
UNITED STATES ATTORNEY

Date: June 1, 2015

Michael D. Anderson
Assistant United States Attorney

Date: 6/1/15

Vicki M. Davis
Assistant United States Attorney
Chief, Criminal Division

10

Rev. 8/14

On behalf of GCAC, I have consulted with counsel and fully understand all rights with respect to the offense charged in the Information pending against GCAC. On behalf of GCAC, I have read this Plea Agreement and carefully reviewed every part of it with counsel for GCAC. On behalf of GCAC, I understand this agreement, and I voluntarily agree to it. GCAC hereby stipulates that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: May 29, 2015

For Gulf Coast Asphalt Company, L.L.C.
Defendant

I am the attorney for the defendant. I have fully explained its rights with respect to the offense(s) charged in the Information in this matter. I have carefully reviewed every part of this Plea Agreement with GCAC. To my knowledge, this decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, the decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 6.1.15

Tim Johnson
Attorney for Defendant

11

Rev. 8/14

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. |
| | ) | |
| GULF COAST ASPHALT COMPANY, L.L.C. | ) | |

**FACTUAL RESUME**

The defendant, **GCAC**, admits the allegations of Counts One and Two of the Information.

**ELEMENTS OF THE OFFENSE**

**GCAC** understands that in order to prove a violation of Title 33, United States Code, Section 1321(b)(3), as charged in Count One of the Information, the United States must prove:

First:   The defendant is a person within the meaning of this statute;

Second:   The defendant discharged oil;

Third:   The discharge of oil was into the navigable waters of the United States;

Fourth:   The discharge of oil was in such quantities as may be harmful; and

Fifth:   The defendant acted negligently.

**GCAC** understands that in order to prove a violation of Title 16, United States Code, Section 703(a), as charged in Count Two of the Information, the United States must prove:

First:   The defendant is a person; and

Second:   The defendant did take or kill;

Third:   Any migratory bird listed at 50 C.F.R. §10.13(c); and

Fourth:   The taking was unlawful, that is without permission or permit.

1

Rev. 8/14

## OFFENSE CONDUCT

Defendant, **GCAC**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for GCAC's plea of guilty. The statement of facts does not contain each and every fact known to **GCAC** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

At all times relevant this conduct occurred in the Southern District of Alabama:

### A. Defendant

1. The Defendant is Gulf Coast Asphalt Company, LLC, a limited liability corporation incorporated in the State of Alabama with Articles of Organization dated June 1, 1994.

2. From 2002 to February 7, 2013, the Defendant operated a liquid asphalt and fuel oil storage terminal located in Mobile, Alabama.

### B. Property Description

3. The Defendant had a storage capacity over 900,000 barrels (37.8 million gallons) and a dock with 38 feet of draft to accommodate oceangoing vessels up to 750 feet in length.

4. The Defendant was located on Blakeley Island on the Mobile River, a navigable-in-fact tidally-influenced inlet of the Mobile Bay. The Blakeley Island area of the Mobile River is located across the river from the Alabama State Docks. The area is a heavy shipping corridor widely used for commercial and recreational boating.

### C. Laws Regulating the Discharge of Oil or Hazardous Substances

5. The Oil Pollution Act (OPA) at 33 U.S.C. § 1321(b)(3) prohibits any person from discharging oil or hazardous substances into or upon the navigable waters of the United States,

adjoining shorelines, or into or upon waters of the contiguous zone in such quantities as may be harmful.

8. A person is defined at 33 U.S.C. §1321(a)(7) as an individual, firm, corporation, association or partnership.

9. Discharge is broadly defined at 33 U.S.C. § 1321(a)(2) to include any spilling, leaking, pumping, pouring, emitting, emptying or dumping.

10. Oil is defined at 33 U.S.C. § 1321(a)(1) as oil of any kind or in any form, including fuel oil. There is no question that the heavy fuel oil discharged by GCAC is "oil" within the meaning of the CWA.

11. A navigable water is defined at 33 U.S.C. §1362(7) as "waters of the United States, including the territorial seas." The term "waters of the United States" is defined by regulation at 40 C.F.R. §110.1 to include waters which are, were, or may be susceptible to use in interstate or foreign commerce, including all waters subject to the ebb and flow of the tide; all interstate waters; and tributaries of such waters.

12. A harmful quantity of oil is defined by regulation at 40 C.F.R. § 110.3 as that which creates a visible sheen on the water.

### F. Law Regulating Migratory Birds

13. The Migratory Bird Treaty Act (MBTA) at 16 U.S.C. § 703(a) makes it unlawful for any person to take any migratory bird listed at 50 C.F.R. § 10.13(c).

14. The Laughing Gull (Leucophaeus atricilla) and the Black-Crowned Night Heron (Nycticorax nycticorax) are migratory birds listed at 50 C.F.R. § 10.13(c).

Rev. 8/14

15. The definition of "take" at 16 U.S.C. § 1532(19) includes to harm or kill. The regulatory definition of "harm" is defined at 50 C.F.R. § 17.3 to mean "an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."

G. General Allegations

16. At or about midnight on September 1, 2011, the Defendant discharged an estimated 143 barrels (6,006 gallons) of fuel oil into the Mobile River and into drainage canals which lead to the Mobile River. The discharge was caused by an over-fill of oil during a tank to tank transfer when employees pumped oil into the receiving tank under pressure. Because employees miscalculated the tank volume of the receiving tank prior to the transfer and engaged in the transfer of oil without employing proper procedures, the tank ruptured and oil was released into the secondary containment area and ultimately into the Mobile River.

17. As a result of the discharge, the U.S. Coast Guard (USCG) closed the Mobile River for a length of 4.7 miles to all traffic on September 1, 2011. Approximately 38 commercial vessels and 100 recreational vehicles were delayed for more than 18 hours, and some required decontamination before the USCG permitted them to leave the area.

18. The spill negatively impacted fish and wildlife, including the taking of at least one Alabama Redbelly Turtle (an endangered species), a Black-Crown Night Heron, and two Laughing Gulls (migratory birds).

### COUNT 1: Discharge of Oil in Violation of the CWA, 33 U.S.C. § 1321(b)(3)

19. Paragraphs 1 through 18 are realleged and incorporated herein.

20. On or about September 1, 2011, the Defendant negligently caused a discharge of fuel oil into or upon the navigable waters of the United States, adjoining shorelines in such quantities as may be harmful, to wit: Defendant was a "person" within the meaning of the CWA; the discharge occurred during the tank overfill and spill; oil spill identification analyses by the USCG confirm that the oil discharged into the Mobile River originated from Defendant; the fuel oil discharged by Defendant is an "oil" within the meaning of the CWA; the Mobile River is a navigable-in-fact tidally-influenced inlet of the Mobile Bay, and is a water of the United States for purposes of the CWA; Defendant's spill of fuel oil caused a sheen upon the Mobile River and adjoining shorelines; and Defendant negligently conducted its operations, engaged in the transfer of oil without employing proper procedures and deliberately kept valves open; in violation of 33 U.S.C. § 1321(b)(3).

### COUNT 2: Violation of MBTA, 16 U.S.C. § 703(a)

21. Paragraphs 1 through 18 are realleged and incorporated herein.

22. On or about September 1, 2011, the Defendant unlawfully killed migratory birds, to wit: Defendant was a "person" within the meaning of the MBTA; the discharge of oil affected and killed at least two Laughing Gulls (*Leucophaeus atricilla*) and one Black-Crowned Night Heron (*Nycticorax nycticorax*), which are migratory birds listed at 50 C.F.R. § 10.13(c); and Defendant did not have permission from either the U.S. Department of the Interior or Commerce, or any other agency that issue permits to authorize such activity; in violation of 16 U.S.C. § 703(a).

AGREED TO AND SIGNED.

Respectfully submitted,

KENYEN R. BROWN
UNITED STATES ATTORNEY

Date: ~~May 27,~~ June 1, 2015

_____
Michael D. Anderson
Assistant United States Attorney

Date: 6/1/15

_____
Vicki M. Davis
Assistant United States Attorney
Chief, Criminal Division

Date: May 29, 2015

_____
For GCAC
Defendant

Date: 6.1.15

_____
Tim Johnson
Attorney for Defendant

Rev. 8/14

6